## JARRATT & TODD *v.* CORBETT *et al.*

*Atkinson, J.*—1. There was no error in refusing to admit parol evidence of the contents of writings, where the same were not accounted for, and no foundation for introducing the secondary evidence was laid.

2. In view of the pleadings and evidence in this case, no right of recovery was established, and therefore the court properly granted a nonsuit.                              *Judgment affirmed.*

March 23, 1896. Argued at the last term.

Action on bond. Before Joseph H. Hall, judge *pro hac vice.* Bibb superior court. November term, 1894.

Jarratt & Todd brought suit upon the bond of W. P. Corbett as marshal of the United States. The condition of this bond is, that "the said Walter P. Corbett by himself and his deputies shall faithfully perform all of the duties of the said office of marshal." From the account attached to the summons it appears, that the plaintiffs' claim is for jury and bailiff scrip certificates of Corbett, marshal, "taken by him through his deputies for payment and never accounted for," viz: bailiff scrip $92, witness scrip $19.30; with a credit of $26 cash, leaving a balance of $85.30. It appears from the testimony of P. D. Todd, one of plaintiffs, that on December 25, 1891, he started to the court-house with the scrip in his pocket, and met W. H. Wooten, who said, "I have just started to your store to get the scrip; have you got them?" Todd replied, yes, and Wooten said, "If you will give them to me, it will save you the trouble of going there; and I will check them up and send you a check for them." Todd handed him the scrip, and that afternoon he sent Todd two checks, one on the bailiff scrip and one on the witness scrip, leaving a balance $85.30. Todd had previously discounted such scrip and had them paid; had his transactions generally with Wooten, but Corbett signed the checks. Several times before, Wooten had come to get the scrip and

had taken it away from Todd's store, and Todd got his money for it. On the next day after the conversation before related, he went and asked Wooten why he did not give him a check for the whole amount. Wooten replied, the scrip was on a different pay-roll, and he would check them up and send Todd a check as soon as he could straighten his books; that he was busy fixing to go to Savannah, and if Todd would wait a little while, he would fix them up and send Todd a check for them in the afternoon. When the scrip was given to Wooten, Todd took a memorandum of the amount of it, that is, the total amount of each kind, but did not take the names of the persons in whose favor the scrip was issued. He never received anything further from Wooten, who went to Savannah and never came back. He remained with Corbett but a short while afterwards. From the testimony of Corbett, it appears that Wooten held a commission as deputy-marshal under him, his duties being to keep books and do the other work of a clerk in the office. He made out checks about the office transactions, which were delivered to Corbett to be signed, who required the scrip to accompany the check in each and every case. When more than one scrip was paid by one check, as, where Jarratt & Todd had the scrip of A, B, C, D, and E, for $10.00 each, when the same were presented a check was written to Jarratt & Todd or to whomever the amount was to be paid, and on the stub of the check-book were entered the names of each individual, whether witness or juror. It was the duty of the deputy-marshal to do that, make out the checks and make the entries on the stubs. It was his business to get the check and scrip together, ready for signature and approval when the marshal came in. The scrip was presented usually in small amounts, from $5 to $20. If a man discounted $400 or $500 worth, it would require some time for a bookkeeper to make out appropriate checks for each one. It was usual for men who discounted $500 or $600 worth of them to come and wait until the bookkeeper

could make them out and make proper entries, and for the marshal to sign them. Wooten did not have authority to go out of the office and look up scrip to pay it. It was not the custom to do it, that Corbett knew of; he never knew of it being done. It was the power of the marshal to sign checks, but not of the deputies. The scrip was negotiable by delivery after being endorsed, at the marshal's office, by a statement that the witness or juror had signed the pay-roll and would be paid the within amount upon receipt of funds. Corbett never took scrip from parties and kept it there to collect for them when the money came in, and Wooten had no authority to do that. Corbett has received from the United States money with which to pay all the scrip payable by him. The statement that when the clerk certified so many days' attendance and the person entitled to so much, the marshal certified on the back that he would pay the bearer the amount stated within the certificate, applied to witness and jury scrip; the clerk had nothing to do with the bailiff scrip; this latter was the due bill of the marshal. . During Corbett's term of office, funds were sent him to pay all claims that were in his hands, which was done. He paid all the scrip issued from his office, both bailiff and witness.

Todd, reintroduced, was asked to describe the scrip he delivered to Wooten. To this defendant objected, on the ground that the scrip was in writing, which was the highest evidence, and there was no notice to produce and no accounting for its loss. Todd testified that he did not know where the scrip was; knew Wooten had it, but did not know what he did with it. Defendants' objection was sustained; and on their motion a nonsuit was granted.

*Smith & Jones*, for plaintiffs.
*James A. Thomas*, for defendants.